UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTINE L. KING,              )
                                   )
    Plaintiff,              )
                                   )
    v.                 )    Case No.: 3:14-CV-1515
                                   )
CAROLYN W. COLVIN,         )
Acting Commissioner of Social Security,  )
                                   )
    Defendant.          )

## OPINION AND ORDER

This is a social security appeal.  The Claimant, Christine King, applied for social security

disability benefits, but the Social Security Administration denied her application.  So, she filed

this action seeking review of the Commissioner's decision.  The parties have now briefed the

matter and it is ripe for review.[1]  [DE 15]; [DE 22].  For the foregoing reasons, the Court

REMANDS this matter to the Commissioner for further proceedings.

### FACTS

King filed for social security disability benefits on June 19, 2012, alleging a disability

onset date of June 1, 2011. Tr. 19.  Her claim was denied once initially and again on

reconsideration. Tr. 62, 64.  At King's request, Administrative Law Judge Romona Scales (the

ALJ) then held a hearing on August 20, 2013, at which King was represented by counsel.

*1. King's Testimony*

At the hearing, King testified that she works about twenty hours per week as an

administrative assistant and has done so since 2010. Tr. 38-39.  Generally she works two four-

---

[1] King did not file a reply brief, but her time to do so has lapsed.  In accordance with the Court's order of May 14, 2015 [DE 21], her reply brief was due on June 23, 2015.

to-five-hour days at a time, followed by a rest day. Tr. 52. She previously worked as an interior designer for about five years. Tr. 40.

While she worked forty hours per week prior to 2010, she is no longer able to do so. Tr. 38-39, 43. She has lupus, which causes her significant fatigue and prevents her from working two eight-hour days in a row. Tr. 43-44. It is exacerbated by stress, fluorescent lights and physical activity such as walking up or down stairs three or four times a day. Tr. 45. On days when her symptoms are bad, she cannot do anything other than sleep and watch TV. Tr. 45-46. That happens between two to four days a week. Tr. 46.

Her employer allows her to alter her schedule as her condition requires. Tr. 46. She takes advantage of that flexibility to stay home on a day that she is scheduled to work about once a week. Tr. 46. She has not worked a complete work week as scheduled in the last two years. Tr. 48.

King further testified that her fatigue prevents her from walking more than ten or fifteen minutes at once or standing for more than twenty to thirty minutes at a time. Tr. 50-51. She can lift about ten pounds, but has problems with numbness and lack of coordination in her fingers. Tr. 51. She can do some household chores, such as folding laundry and assisting with grocery shopping, though fatigue prevents her from doing chores after work. Tr. 52-53. When she does housework, she alternates working for half-an-hour and resting for half-an-hour. Tr. 44. Her husband has to help her with tasks that require lifting. Tr. 52-53.

### 2. *King's Husband's Testimony*

King's husband, Jack Carter King, also testified. He indicated that his wife gets tired easily. Tr. 54. Working exhausts her; it can take her as long as a day to recover from half a day of work. Tr. 55. At least three or four times a month she is "completely down" after working a

half day.  Tr. 55.  She has difficulty doing chores around the home, so he handles most of the housework.  Tr. 53-54.

### 3.  The Vocational Expert's Testimony

Vocational expert Ray Burger (the VE) also testified at the hearing.  The ALJ asked him to consider several hypothetical individuals.  She first asked him to consider a hypothetical individual with King's age, education and past work experience.  Tr. 57.  The hypothetical individual could perform no more than light work and was limited to frequent balancing, stooping and kneeling; frequent crawling; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes or scaffolding and occasional crouching.  *Id*.  The individual also had to avoid concentrated exposure to extreme temperatures and hazards.  *Id*.  The VE stated that such an individual could perform King's past work.  *Id*.  He further testified that interior design skills are very specific and would not transfer to other light-exertion work.  *Id*.  King's administrative assistant skills, however, would transfer to other sedentary occupations such as a receptionist or data entry position.  *Id*.

The ALJ next asked the VE to consider a hypothetical individual with all of the previously mentioned limitations but who was also limited to occasional posturals.  Tr. 58.  The individual would also be limited to frequent handling and bilateral fingering, occasional bilateral overhead reach and no more than four hours of standing or walking and six hours of sitting per day.  *Id*.  The VE testified that such an individual could work in an administrative assistant, receptionist or data entry position, but could not work in interior design.  *Id*.  The ALJ asked if an individual who had such limitations but was restricted to sedentary work could work as an administrative assistant.  *Id*.  The VE testified that she could.

3

The VE further testified that none of the jobs he discussed could be performed by an individual that was off-task for fifteen to twenty percent of the work week due to fatigue, pain or discomfort or by an individual that missed two or more days of work per month. Tr. 59.

*4. The Medical Evidence*

Prior to issuing an opinion, the ALJ considered the medical evidence. It shows that King has a history of lupus, Sjogren's syndrome, irritable bowel syndrome and bursitis. Tr. 313.

On January 12, 2010, King presented to her primary care physician, Dr. Walter Anglemeyer, complaining of dry mouth, sores on her tongue and mouth and trouble swallowing. *Id.* At that visit, Dr. Anglemeyer noted that King had a moderate activity level and did not have bone or joint symptoms, muscle weakness or fatigue. Tr. 313-14. He noted that King had a dry mouth, which he concluded was likely a side effect of lupus and Sjogren's syndrome. Tr. 315.

On February 24, 2010, King went to the emergency department at Elkhart General Hospital for right upper quadrant abdominal and epigastric pain. Tr. 243. She was treated for probable gastritis and released. Tr. 244.

On July 27, 2010, King saw Dr. Nicholas Straniero, her rheumatologist. Dr. Straniero noted that King's medical history included lupus, Sjogren's syndrome, irritable bowel syndrome and migraines. Tr. 286. King reported losing a tooth due to the Sjogren's syndrome, but Dr. Straniero noted that she had an otherwise stable clinical appearance and no other degenerative changes. *Id.*

On August 25, 2010, King saw Dr. Anglemeyer and asked to change one of her medications, Gabapentin, since it was causing her to have a dry mouth. Tr. 310-11. Dr. Anglemeyer instructed King to gradually stop taking it. He also noted that King did not have fatigue, muscle weakness or bone or joint symptoms. Tr. 310-11. King returned to Dr.

4

Anglemeyer on September 14, 2010 and complained of stomach pains and insomnia. Tr. 307. At that time, she had completely stopped taking Gabapentin and indicated that her dry mouth had improved. Tr. 307. She came back on November 29, 2010, still complaining of stomach pains. Tr. 304. Dr. Anglemeyer referred her to Dr. Gary Cornette, a gastroenterologist. Tr. 305. He also noted that she did not have any joint deformities or abnormalities. Tr. 305.

King consulted with Dr. Cornette on January 6, 2011. Tr. 254. She reported that she had experienced abdominal pain for approximately four months. *Id*. Dr. Cornette ordered a CT scan, which revealed moderate atrophy in King's left kidney. Tr. 258. He also found her to have malaise. Tr. 255.

King saw Dr. Anglemeyer again on January 11, 2011 due to hip pain and abdominal pain. Tr. 301. King informed him that she could not afford the diagnostics recommended by Dr. Cornette: an "upper and lower scope" and another CT scan. *Id*. Dr. Anglemeyer noted tenderness in King's left and right hips and found her to have bone and joint symptoms, but found that she was not fatigued. Tr. 302-03.

On January 25, 2011, King saw Dr. Straniero for a rheumatology reassessment. Tr. 285. He found her to be "clinically stable." *Id*. He also found that she had Raynaud's phenomenon, some signs of bursitis and that her joints showed "scattered mild degenerative change." *Id*. He noted that she had stopped taking Gabapentin due to problems with oral dryness, which had caused her to lose teeth. Tr. 285.

On May 9, 2011, King saw Dr. Anglemeyer and complained of back pain and depression. Tr. 297. Dr. Anglemeyer found that she had fatigue and bone and joint symptoms. *Id*.

King returned to Dr. Straniero on July 26, 2011. Tr. 283. At that visit, Dr. Straniero noted that King's lupus and Sjogren's syndrome had "been relatively mild and stable in nature."

*Id.*  He found that she had lateral hip pain, but that it responded well to osteopathic manipulations.  *Id.*  He also noted that her abdominal pain had resolved and that she did not report any joint swelling, though he observed some degenerative change in her joints.  *Id.*

On January 24, 2012, King saw Dr. Anglemeyer again and complained of back pain (apparently linked to issues with her right hip) and neck pain.  Tr. 294.  Following a cervical exam, Dr. Anglemeyer noted King had tenderness in her thoracic and lumbar spine.  Tr. 295. This time he did not find her to exhibit fatigue, though did note that she had bone and joint symptoms.  Tr. 294.

King saw Dr. Straniero on January 31, 2012.  Tr. 279.  She told him that she had a "good energy level" and was "gradually improving" after switching from working full time to working twenty hours per week.  *Id.*  She complained of mild fatigue, though Dr. Straniero found that she did not present with fatigue or Raynaud's phenomenon.  Tr. 279-80.  King returned to Dr. Straniero on July 31, 2012.  She indicated that she felt well with "minor complaints", though reported, among other things, decreasing energy levels and joint stiffness and hip pain that increased with pressure and climbing stairs.  Tr. 275.  She also complained of oral dryness with accompanying dental damage and tooth loss.  *Id.*  Dr. Straniero noted that King's hips were tender and had a reduced internal range of motion, which caused her some pain.  Tr. 277.  He formulated an assessment and plan for King's lupus, which included ordering several urine and blood tests.  Tr. 278.

On October 25, 2012, Dr. Anglemeyer wrote a letter opining on King's condition.  Tr. 397.  He indicated that she has lupus, Sjogren's syndrome and possible Raynaud's disease.  *Id.* He further stated that "[t]hese diseases are stable and disabling for her . . . [though] tend to wax and wane.  During the times that they [flare up], she is unable to work full-time.  She does,

6

indeed, experience fatigue and difficulty using her hands during these times." *Id*. He concluded that part-time work seems to work well for her. *Id*.

On August 31, 2012, King saw Dr. Frances Dwyer, an agency doctor. Tr. 329. King told Dr. Dwyer that she began experiencing symptoms of lupus in 1994 and was diagnosed with it in 1998. *Id*. She indicated that she began taking medication for it at that time and her functioning is now "50% improved over baseline", though said that her symptoms had grown worse with time. *Id*. She also noted issues with Raynaud's syndrome and Sjogren's syndrome. *Id*. Dr. Dwyer found that King has numerous symptoms, including joint pain associated with lupus flare ups. Tr. 330-31. He also noted that she has headaches precipitated by exhaustion, but did not otherwise mention her fatigue. *Id*. Ultimately, Dr. Dwyer concluded that King did "not appear to have any significant disability at the time" of her exam. Tr. 332.

Dr. Louise Wunsch, an agency medical consultant, reviewed King's medical records and completed an assessment of her residual functional capacity on September 12, 2012. Tr. 350-57. He found that King has lupus, Sjogren's syndrome, Raynaud's syndrome and bursitis. Tr. 350-51. Dr. Wunsch opined that King was partially credible, but that the record did not support the severity of symptoms she alleged, particularly with regard to her ability to stand and walk for significant periods. Tr. 355. Ultimately, he concluded that King can stand or walk for about six hours in an eight-hour workday and sit for about six hours per eight-hour workday. Tr. 351. Two other agency medical consultants then reviewed the record and affirmed Dr. Wunsch's opinion as written. Tr. 358, 359.

On January 17, 2013, King returned to Dr. Straniero and complained of decreased energy; dry mouth; joint pain in her hands, wrists, hips and knees and fatigue that aggravated the frequency of her migraines. Tr. 362. Dr. Straniero noted that King's dry mouth was placing her

dental health at risk and that she had lost six teeth.  Tr. 362.

King visited Dr. Anglemeyer shortly thereafter on January 31, 2013 and complained of pain and swelling in her right ankle and elbow, which Dr. Anglemeyer noted may be due to her autoimmune disorders.  Tr. 393-94.  She did not present with fatigue.  *Id*.

On February 17, 2013, Dr. Straniero authored a medical opinion summarizing King's condition.  He found that she suffers from lupus and Sjogren's syndrome and noted that she complained of numerous symptoms including "profound, persistent fatigue, limiting joint pain [and] recurrent migraines aggravated by fatigue."  Tr. 360.  He further noted that King has flare ups in her condition which exacerbate her symptoms and that she has difficulty focusing due to fatigue.  *Id*.  He concluded that "problems associated with her underlying systemic rheumatic disease" prevent King from working full time and that it is difficult for her to work even part time.  *Id*.  King saw Dr. Straniero once more on July 31, 2013 and complained of decreasing energy levels; fatigue; recurrent headaches and joint pain in her hands, wrists, hips, knees and lower back.  Tr. 398.  She reported that she had taken six weeks off of work due to medical difficulties and had tried to return to part-time work, though was having difficulty doing so.  *Id*.  Dr. Straniero found her to have fatigue, dry mouth and migraines.  Tr. 399.

### 5. *The ALJ's Decision*

After reviewing this medical evidence and hearing King's testimony, the ALJ issued a written opinion which upheld the decision to deny King benefits.  The ALJ found that King met insured status requirements through December 31, 2017 and had not engaged in substantial gainful activity since her alleged onset date.  Tr. 19.  She further found that King was severely impaired by lupus, Raynaud's syndrome, Sjorgen's syndrome, irritable bowel syndrome, bursitis and migraine headaches.  Tr. 21.  The ALJ concluded, however, that none of King's impairments

met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpt. P,

Appendix 1. She then evaluated King's residual functional capacity (RFC) and found that King

was able to:

> [P]erform light work as defined in 20 CFR 404.1567(b) which includes the ability to lift and/or carry and push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk six hours in an eight hour workday, and sit six hours in an eight hour workday. She can frequently balance, stoop, kneel, or crawl. [She] can occasionally crouch. She can frequently climb ramps or stairs. [She] can occasionally climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme temperatures and hazards.

Tr. 23. In arriving at this RFC, the ALJ assigned little evidentiary weight to the medical

opinions of Dr. Anglemeyer and Dr. Straniero. Tr. 26. She found that they were not "supported

by the totality of the evidence" and appeared "to be based purely on the claimant's subjective

complaints." *Id*. In contrast, the ALJ gave substantial evidentiary weight to the opinions of the

agency medical consultants and agency medical examiner since they were "within the purview of

their expertise and consistent with the record as a whole." *Id*.

The ALJ also found that King's allegations as to the intensity, persistence, and limiting

effects of her symptoms were "not entirely credible." Tr. 24. The ALJ noted that King (1)

frequently reported no pain and a full range of motion in her upper extremities, wrists, fingers,

bilateral knees and ankles; (2) had received unemployment benefits after her alleged onset date,

which required her to certify that she was physically and mentally able to work full time; (3) was

unable to squat, but could walk, sit, had clear speech and had not been to the emergency room

for migraines in the past year; (4) was able to engage in several activities of daily living such as

dressing herself, weeding her flowerbed and washing windows; (5) only required treatment from

Dr. Straniero once every six months and (6) had never been prescribed a cane. Tr. 24-25.

The ALJ then determined that King could perform light work and was capable of

returning to her past work as an interior decorator. Tr. 26. As a result, the ALJ determined that

King was not disabled. Tr. 27. The Appeals Council denied a request for review of that decision, thereby making it the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## STANDARD OF REVIEW

The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; she may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, she must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir.

2009).  Furthermore, conclusions of law are not entitled to deference.  So, if the Commissioner

commits an error of law, reversal is required without regard to the volume of evidence in support

of his factual findings.  *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

Disability benefits are available only to individuals who are disabled under the terms of

the Social Security Act.  *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).  A claimant is

disabled if he or she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations contain a five-step test to

ascertain whether the claimant has established a disability.  20 C.F.R. § 404.1520(a)(4).  These

steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  At step

three, if the ALJ determines that the claimant's impairment or combination of impairments meets

or equals an impairment listed in the regulations, the Commissioner acknowledges disability.  20

C.F.R. § 404.1520(a)(4)(iii).  However, if a listing is not met or equaled, the ALJ must assess the

claimant's residual functional capacity (RFC) between steps three and four.  The RFC is then

used to determine whether the claimant can perform past work under step four and whether the

claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant

has the burden of proof in steps one through four, while the burden shifts to the Commissioner at

step five to show that there are a significant number of jobs in the national economy that the

claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

King argues that the ALJ erred in conducting this analysis in three respects. First, she

says that the ALJ neglected to address fatigue, her primary symptom. Second, she says that the

ALJ did not provide a sufficient justification for not giving controlling weight to the opinions of

her treating physicians. Third, she says that the ALJ mistakenly concluded that she was capable

of performing her past work as an interior designer without considering how the tools of that

trade have changed since King last performed it. The Court will address each of these arguments

in turn.

### 1. Fatigue

King contends that the ALJ improperly disregarded evidence that she suffered from

fatigue and failed to consider that impairment in determining her residual functional capacity.

The Commissioner responds that the ALJ addressed fatigue through her treatment of King's

credibility. The Commissioner says that the ALJ found several reasons to discredit King, which

amounted to a rejection of King's fatigue allegations, since those allegations were predicated on

King's testimony (and her physicians' opinions, which the ALJ found to be based exclusively on

King's subjective complaints).

The Court finds that the ALJ did not adequately address fatigue. It is well-established

that, while the ALJ need not address every piece of evidence in the record, she cannot ignore an

entire line of evidence that contradicts her findings. *Zurawski*, 245 F.3d at 888. Fatigue was a

central issue in this case. King testified that it was her worst symptom and that it prevented her

12

from working a full-time schedule. Tr. 44, 46-47. Moreover, she said her part-time work was only possible because her employer provided her with substantial accommodations and a flexible schedule. Tr. 40, 48-49. That is because even working part time she had days where her fatigue was so severe that she could do "absolutely nothing." Tr. 46.

King's testimony also had some support in the record. She complained of fatigue to Dr. Straniero on January 31, 2012 and July 31, 2013. Tr. 279, 398. On the latter date, Dr. Straniero also found her to have fatigue.[2] Tr. 398. Dr. Straniero then issued an opinion letter on February 17, 2013, in which he noted that King complained "of profound, persistent fatigue" and that fatigue interfered with her ability to stay on task. Tr. 360. Dr. Anglemeyer also noted King's problems with fatigue. He found King to be positive for fatigue on May 9, 2011 and, several months later, stated in an opinion letter that King experiences fatigue when her autoimmune diseases flare up. Tr. 297, 397.

Remarkably, the ALJ did not address any of this evidence. After describing King's alleged impairments, the ALJ never again mentions fatigue in her decision. That is inexplicable given that fatigue was King's primary complaint and the main topic at her hearing. It is also contrary to Seventh Circuit precedent. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003) (remanding in part because the ALJ ignored evidence of several of the claimant's purported symptoms).

Moreover, the Commissioner's argument that the ALJ implicitly addressed fatigue through her assessment of King's credibility is not well founded for four reasons. First, it is

---

[2] The Court notes that Dr. Straniero found King, contrary to her complaints, not to have fatigue on January 31, 2012. Tr. 280. The reason for this discrepancy is unclear and, in light of it, it will be up the ALJ on remand to determine what weight (if any) to give to King's complaint on this date.

13

inappropriate to impute any rationale to the ALJ's treatment of fatigue, since there is no

indication that she conducted any analysis of that symptom whatsoever. *See Parker v. Astrue*,

597 F.3d 920, 922 (7th Cir. 2010) (noting that *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)

"forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself

has not embraced.").[3]  Second, even if the ALJ did consider fatigue and intended to address it

implicitly (an odd way to address a claimant's primary asserted symptom), that would still be

impermissible because it would not allow for meaningful appellate review. *See Herron v.*

*Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Our cases consistently recognize that meaningful

appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of

evidence.")  Third, even if the ALJ had made explicit that she considered King's testimony in

analyzing fatigue, the ALJ's treatment of that evidence would not have provided a sound basis

for concluding that King did not suffer from fatigue.  As the Commissioner notes, the ALJ

considered several factors that could detract from King's credibility.  But ultimately the ALJ

found only that King's "allegations regarding the limiting effects of her impairments [were] not

entirely credible."[4]  Tr. 25.  That boilerplate language "yields no clue to what weight the trier of

---

[3] The Court recognizes, as the Commissioner notes, that the Court must give the ALJ's opinion "a commonsensical reading rather than nitpicking at it." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).  But it is not "nitpicking" to decline to presume that the ALJ analyzed a symptom where she devoted absolutely no substantive discussion to it.

[4] On remand, in addition to clarifying her conclusion as to the credibility of King's testimony, the ALJ should refine the methodology she uses to evaluate it.  The ALJ raises several issues in analyzing King's credibility that would seem to have no connection to her credibility whatsoever.  For example, she noted that King was unable to squat and had not been to the emergency room for migraines in the past year.  Further, if the ALJ again includes a description of King's daily activities, she should explain how and whether they are "consistent or inconsistent with the pain and limitations [King] claim[s]." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Next, if the ALJ believes it questionable that King only required treatment from her rheumatologist about every six months, she should indicate why she believes this to be a sparse treatment history and any potential explanations for it (such as King's apparent financial constraints, tr. 301). *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).  Lastly, while the ALJ mentions that there is "no evidence to indicate a cane has ever been prescribed or deemed to be medically necessary for the claimant," tr. 25, the Seventh Circuit has repeatedly indicated that this is not suspicious. *See, e.g.*, *Parker*, 597 F.3d at 922.

14

fact gave [King's] testimony" and thus no insight as to how the ALJ might have applied it to the

fatigue analysis. *Parker*, 597 F.3d at 922. And fourth, even if the ALJ's assessment of King's

credibility was sufficiently clear to be relevant to the fatigue calculus, it would not account for

the opinions of King's treating physicians, which, as articulated below, were not simply

regurgitations of King's subjective complaints. As such, remand is required so that the ALJ can

adequately assess King's allegations of fatigue. *See Golembiewski,* 322 F.3d at 917. But while

this misstep alone justifies vacating the ALJ's decision, the Court nevertheless addresses the

parties' remaining arguments in the interest of thoroughness and to guide the ALJ's further

treatment of this matter.

  *2. Treating Physicians*

  King also says that the ALJ committed reversible error by giving "little evidentiary

weight" to the opinions of her treating physicians, Dr. Anglemeyer and Dr. Straniero. Tr. 26.

The Commissioner responds that the ALJ properly discounted these opinions because they were

based entirely on King's subjective complaints and were not otherwise consistent with the

totality of the evidence.

  Treating physician opinions are afforded special deference in disability proceedings. The

regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be
> the medical professionals most able to provide a detailed, longitudinal picture of your medical
> impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations, such as consultative
> examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory
> diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we
> will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). Treating physician opinions are *not* entitled to controlling weight,

however, if they are not supported by the objective medical evidence, where they are inconsistent

15

with other substantial evidence in the record or where they are internally inconsistent. *See*

*Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314

(7th Cir. 1995)).  Ultimately, the Court defers to the ALJ's decision to give less than controlling

weight to a treating physician opinion so long as the ALJ provides "good reasons" for doing so.

*Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

King's treating physicians, Dr. Straniero and Dr. Anglemeyer, opined that King was

unable to work full time due to lupus-related symptoms including fatigue and joint pain.  Tr. 360,

397.  The ALJ determined that those opinions were not entitled to controlling weight because

they were "not supported by the totality of the evidence and appear[ed] to be based purely on the

claimant's subjective complaints."  The latter observation, as articulated below, is incorrect.  The

ALJ did not err, however, in concluding that King's physicians' opinions were inconsistent with

other substantial evidence in the record.  In particular, the ALJ noted that they were not

consistent with the opinions of the agency medical consultants and agency medical examiner.

Tr. 26.  That was a permissible reason to not give them controlling weight.  *Skarbek v. Barnhart*,

390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion

if it is inconsistent with the opinion of a consulting physician"); *Bauer v. Astrue*, 532 F.3d 606,

608 (7th Cir. 2008).

But when "an ALJ decides not to give controlling weight to a treating physician's

opinion, the ALJ is not permitted simply to discard it."  *Scrogham v. Colvin*, 765 F.3d 685, 697

(7th Cir. 2014).  Rather, the ALJ is "required by regulation to consider certain factors in order to

decide how much weight to give the opinion[.]"  *Id.*  These factors, set forth in 20 C.F.R. §

404.1527, are: (1) the "length of the treatment relationship and the frequency of examination;"

(2) the "[n]ature and extent of the treatment relationship;" (3) "[s]upportability;" (4) consistency

"with the record as a whole;" and (5) whether the treating physician was a specialist in the relevant area. *Id*.

The ALJ did not properly apply those factors in weighing Dr. Straniero's and Dr. Anglemeyer's opinions. She did note that Dr. Straniero had described the physical impact of King's condition as only mild and moderate. Tr. 26. That could, perhaps, be interpreted as inconsistent with his conclusion that King could not work full time and thus provide some justification for discounting his opinion. The ALJ also considered a number of instances where King failed to demonstrate certain symptoms that could be associated with lupus. Tr. 24.[5]

But the ALJ discussed none of the evidence that weighed in favor of crediting King's treating physicians' opinions. That included the observations of both of King's physicians that her symptoms wax and wane, tr. 360, 397, which might explain why King sometimes did not present with certain symptoms. *See Groskreutz v. Barnhart*, 108 F. App'x 412, 418 (7th Cir. 2004) (noting that it was problematic for an ALJ to find a claimant not credible because she did not report pain on some occasions where the ALJ did not consider that the claimant's symptoms waxed and waned and that she did report pain on other occasions). Furthermore, contrary to the findings of the ALJ, Dr. Straniero and Dr. Anglemeyer do not appear to have relied entirely on King's subjective complaints in forming their opinions. Rather, their notes also reflect objective findings including the results of urine and blood tests, tr. 278, lupus-related dry mouth and tooth loss, tr. 315, 362, and joint effusion and degeneration. Tr. 285, 394. Moreover, the ALJ failed to consider the length of King's relationship with Dr. Straniero and Dr. Anglemeyer (which dates to

---

[5] King also argues that the ALJ improperly considered the results of King's 2013 anti-neutrophil antibody (ANA) test to conclude that she did not have lupus. But the ALJ expressly found that lupus was among King's severe impairments. Tr. 21. Nevertheless, on remand the ALJ should ensure that she only discusses King's ANA test "through the perspective of the various doctors who reviewed" it, rather than playing doctor herself. *Turner v. Astrue*, 390 F. App'x 581, 584 (7th Cir. 2010).

at least 2010), the nature of the treatment she received (which included a hydroxychloroquine prescription for lupus, *see, e.g.*, tr. 296) and Dr. Straniero's specialty as a rheumatologist. *See Scrogham*, 765 F.3d at 697 (noting an ALJ's error in failing to consider these factors). Given these oversights, the Court "cannot assess whether [the ALJ] appropriately chose not to give much weight to the treating physicians' opinions." *Id*. at 697-98. On remand, the ALJ should clearly articulate the weight due to King's physicians' opinions and how that determination is justified given all relevant 20 C.F.R. § 404.1527 considerations.

*3. Ability to Return to Interior Design Work*

Finally, the Court notes that King contests the ALJ's step-four determination that she is able to return to her past work as an interior designer. King argues that she is unable to return to that position since interior design has changed considerably since she last worked in that field in 2010. As such, she contends that she does not possess the required skills for that work under 20 C.F.R. § 404.1568.

But, at King's hearing, the vocational expert testified that an individual with King's limitations and experience would be able to work as an interior designer. King did not object to that determination. So, it is improper for her to now raise arguments as to the integrity of the VE's findings to this Court. As numerous cases make clear, "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).[6] Nevertheless, since this matter will be remanded for the above-discussed reasons, King

---

[6] That said, King would still be free to argue that the VE's testimony was invalid since, in light of the above-discussed analytical errors, it was based on a faulty RFC. *Barrett*, 355 F.3d at 1067.

will have another opportunity to challenge the VE's testimony, should she disagree with it, at her next hearing.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner denying King's claim for benefits is **REVERSED**, and this matter is **REMANDED** for to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  March 9, 2016


       /s/ JON E. DEGUILIO
Judge
United States District Court